The court now calls consolidated cases 116226 and 116825 Jason S. Marks, et al. v. Mary Ellen Vanderventer, et al. People of the State of Illinois, Illinois Attorney General's Office, on behalf of the people of the state of Illinois in this matter. Your Honors, the Rental Housing Support Program surcharge is constitutional, and this court should reverse the lower court's decision. As your Honors know, it is well established that statutes need to be presumed constitutional and upheld, if at all possible. Turning first to the fee office issue under Article VII, Section 9A of the Illinois Constitution, the prior version, the pre-March 13th Amendment version of the Rental Housing Support Program surcharge is not an unconstitutional fee office. By this point in the briefing, the argument has basically been narrowed down to the fact that, or the allegation that, the $1.00 portion of the original $10.00 surcharge retained by the county recorders was an improper skimming or diversion of funds. However, this court, in Redmond v. Novak, which is cited in our opening brief, stated that one taxing body cannot skim off taxes levied by another and divert that money to a use other than for which it was levied. That's the point of the skim off. You cannot take a percentage of taxes that have been levied for other reasons and use that and save that as a fee, basically, for collecting taxes. But this is not a skimming statute. At no point do the county recorders take any percentage of money that is destined for another purpose. Instead, the surcharge essentially created two surcharges under one name. And I think that, frankly, is what caused the confusion in the lower courts fee office analysis. As before it was amended, and again, it has been amended, and it was amended essentially at the time of the lower court's decision, or right after that time. But the statute has been amended. But at the time, as it was originally set, it was a $10.00 charge. It was a $10.00 surcharge. But there are really two separate charges within that. One, a $9.00 charge that was submitted to the state and then dispersed through the Housing Development Authority to effectuate the program. And then second, a second separate $1.00 charge that was retained by the recorders and was sent to the county's general revenue fund. This is nothing more than a legislative allocation of a tax or a fee. This is not a skim of money that was levied for some other purpose. The $1.00 always was levied specifically for the purpose of going to the county. Mr. Legner, under Crocker, is there a rational basis for imposing a charge on recording real estate documents to fund the housing program? Yes, there is, Your Honor. First, I would say that in the rational basis analysis, when you start bringing in Crocker and Boynton, this court specifically stepped back from both of those cases in Arengold. In Arengold, this court addressed Crocker and Boynton and said, yes, there was a due process aspect to those cases, but it was really about the constitutional rights that were at issue. In one case, access to the courts. In the other case, the right to marry. So insofar as there is this remoteness or attenuation issue that is created by Crocker, this court has stepped back from that, and that's not really a part of the due process analysis anymore. Because it is well settled that the people upon whom taxes are levied need not be the beneficiaries of that tax. That is a basic part of tax law in the state's power to tax. But if this court were to look for a rational basis, the rational basis is this. The General Assembly found that there is a lack of affordable, quality rental housing stock in this state. As a result of the lack of affordable rental housing, such rental housing as there is suffers from high tenant turnover and a lot of vacancies. As a result of that, the property owners don't maintain their properties, they go into foreclosure because they lose their revenue stream. As a result of vacant and foreclosed and poorly maintained properties, property values go down, community-wide. What about the fact that the surcharge doesn't apply to everybody that owns real estate? It only applies to those that purchase or acquire real estate. If that's a problem, isn't it a problem that ought to be shared by everybody that owns real estate, not just the people that are unfortunate enough to be recording their documents? Well, there does not need to be a perfect fit, certainly, in the class drawing. The law under uniformity and due process does not require complete rationality or a completely correct or rigid class drawing. It is true that people who have property and who don't record documents reflecting that property then are not paying for this program, but still would be receiving the benefits. That's true. But that kind of rigidity is not required when at least it was rational for the General Assembly, and that's the test here, it was rational for the General Assembly to say, look, people who are recording real estate-related documents have some interest right now going forward, prospectively, in real estate. And so real estate prices affect them. There is that effect. It's reasonable to conclude that, you know, and going forward, that most individuals with interest in real property do record those documents. And so that they're capturing, essentially, the large part of the group who are benefiting, insofar as that's the test. Again, that's too strict or too rigid of a test. Plus, there's certainly been no showing of how many are outside of this class. We're on a rational basis here, where the General Assembly has made legislative findings and determinations that are entitled to deference, and where they have offered class. It is incumbent upon the plaintiffs to at least show that this class is wildly inaccurately drawn, and there's no evidence of that nature presented. So there's certainly not enough of this type of counter-speculation to the General Assembly's classification to justify striking down the statute. The General Assembly can support its class drawing, its line drawing, by speculation, but if plaintiffs want to rebut that, they need to provide something more than counter-speculation. They need to provide some sort of fact or some sort of evidence to this court, and they haven't done so at this point. And Justice Burke, getting back to you, you know, getting back to your question, so there is a rational link between, once the General Assembly has made these special determinations, that unaffordable rental housing has a negative effect on real estate values, statewide, community-wide. There's a rational link between those who then, those who are recording real estate documents, thus evincing an interest they have in real estate, and therefore real estate values, would benefit by an increase or a program that improves real estate values. And that's what you're saying is the legislature speculated on? Is there any proof or evidence to that? Well, the legislature made findings. It's in the statute. Legislature made findings that said, these are the facts that we find. Now, the legislature doesn't have to show its evidence. It doesn't have to convince, you know, it doesn't have to say, look, we took this evidence, these are the findings of fact that are for review. It doesn't need to do that in the statute or otherwise. In fact, they don't need to make factual findings. We could speculate on a rational basis, but they did make factual findings here, and that gives the statute extra deference or extra support. But once the legislature does make, once the legislature makes those findings, it's incumbent upon the plaintiffs to try to rebut those with actual evidence. And they haven't done so. There's absolutely no evidence whatsoever in this case to rebut that. So ultimately, it's the plaintiff's burden to show that the legislation was unreasonable or irrational, and they simply did not do so here. Do your honors have any other questions? Yes. Are you familiar with Supreme Court Rule 40? It authorizes the chief judge of the circuit court of the various counties or districts to set a fee not exceeding $10 for each marriage, civil ceremony that has been performed. I've written twice, at least twice, holding that it's unconstitutional. That's the majority, of course, found otherwise. How do you distinguish that situation and what we have here now? Is it the fact that the legislature's acted, and under Rule 40, it's the court that has acted? I don't think that it comes down to, I don't think the basis for the distinction is, you know, when the court's acting in basically a legislative process like that. I don't think that's really the basis for the distinction. Insofar as the law, though, requires some kind of rationality in support of the fee based on who is bearing it and what its purposes are, they're very different situations. And your honor, as you know, when you're dealing with marriage license fees, those are implicating separate constitutional concerns. And that's what this court recognized in Aramgold when it was distinguishing the majority decisions in Crocker and Boynton, that that adds extra requirements on the imposition of the fee to determine whether it's reasonable or not. And those, you know, similar issues are just not present here. Thank you. Good morning. May it please the court. Let me begin by agreeing. Would you introduce yourself, counsel? Thank you. The violation of section 2803. And have this case dismissed prior to any deliberation on the question of the constitutionality. But we think even if you do reach that, if you go forward and you reach the constitutional issues, the statute is constitutional. Right. And I'm trying to understand procedurally, you're adopting the arguments of the attorney general. If we reach the constitutional issue and agree with the attorney general, right, it resolves all of your issues as well. Is that fair? That is fair. It would definitely resolve the constitutional issues. But we have a body of case law that says you shouldn't go to the constitutional issue if you don't have to. So I guess I'm asking what you're asking the court to do. to proceed as it did in Lake County without notice to putative defendants, without a chance for them to meaningfully participate in their own defense. That this will create a procedure which is ripe for abuse and manipulation by a savvy plaintiff. The local public entities in this matter would then not have any assurance that they're not being sued outside of their jurisdiction or without their Back to posture. Are you asking the court to vacate the circuit court's findings of unconstitutionality and remand to hear these non-constitutional arguments? That is exactly right, Judge. We'd be asking, Your Honor, we'd be asking for this court to vacate the defendant class certification, vacate the two orders that found this matter unconstitutional, and remand it back to the circuit court with instructions to dismiss the plaintiff's case pursuant to the voluntary payment doctrine. But the circuit court could resolve this matter against you and then still find at that point that it's non-constitutional, right? Or unconstitutional, right? And then we'd be back up here determining the constitutional issue. I just say it's a little bit tough to adopt the Attorney General's arguments on constitutionality and then tell the court to vacate the finding of unconstitutionality and remand to hear these non-constitutional issues. It seems somewhat opposed to me. Judge, it would be an argument in the alternative that what we're looking for is that this matter be dismissed because it's unconstitutional. Because of the non-constitutional grounds. However, if the court is willing to look beyond those and go to the constitutional merits of this case, we believe that the statute is certainly constitutional. And particularly of concern to county recorders and county public entities everywhere is that the way the defendant class certification was enacted specifically did not follow any of the class action provisions of the Code of Civil Procedure. It did not provide notice under 2803. It did not allow any putative defendants the right to intervene or opt out of the defendant class, as in Section 2804. The court below didn't discuss any of the prerequisites of a class under Section 2801 of the Code. There is no discussion on whether or not the differences among the 101 counties that are outside of Lake County are similarly situated, such that a defendant class was even the appropriate method to use in this matter. There is no discussion on whether venue was appropriate for the 101 recorders outside of Lake County. So all in all, the defendant class certification in this matter was improper because of the no notice, because the putative defendants did not have a meaningful chance to participate in their own defense. And the court did not satisfy any of the requirements of the class action provisions of the Code of Civil Procedure. So we'd be asking for the court to vacate the class certification. The second area of concern goes to the non-constitutional grounds. Where a court must consider the non-constitutional grounds before reaching constitutional issues, and that was not done here in the lower court. The circuit court failed to dismiss this matter pursuant to the voluntary payment doctrine and the Tort Immunity Act. The voluntary payment doctrine is the law in cases like Ghetto v. City of Chicago, Illinois Glass v. Chicago Telephone, and Alvarez v. Pappas, and in King v. First Capital Financial Services. As part of the plaintiff's prima facie case, they must plead that the payment was involuntary. So they must allege some facts that show that the payment was made under protest or under duress or compulsion. There are no such facts pled by the plaintiffs in this case. Their failure to plead the involuntary payment in their prima facie case is fatal to their claim, and the matter should have been dismissed in the lower court. And finally, plaintiffs pled this matter in tort. Therefore, the Tort Immunity Act applies. The plaintiffs, the marks plaintiffs, are particularly barred by Section 8101 of the Tort Immunity Act, which is the one-year statute of limitations as they filed their lawsuit beyond the one year. And furthermore, the marks and the more plaintiffs are both barred by Section 2102 of the Tort Immunity Act, which provides immunity to public entities for punitive and exemplary damages, which is what plaintiffs asked for in this matter. Counsel, excuse me over here. On the voluntary payment issue, what do the facts of record show when the attorney or whoever records the documents? Is there one recording fee, or is it itemized and broke out so that the person knows there's this $10 fee? And is it labeled as whatever the title is to it? Your Honor, in the circuit court below, the plaintiffs did not plead any of that information, nor did they attach a copy of the deed. However, in our opening brief, we did attach a copy of the deed of the marks plaintiffs. And it shows that the marks and the more plaintiffs are both liable. And it shows on the deed itself, on the front of the face of it, that the $10 fee is separated out, and it's listed as the Illinois Rental Housing Fund. So it is itemized? That is correct, Judge. In finishing my point about the Tort Immunity Act, the plaintiffs in this matter chose to bring their claim in tort. And therefore, even if this court were to forgive the poor drafting and treat this as a case of restitution, which plaintiffs argue in their response brief, this claim would still fail because the voluntary payment doctrine applies to claims of restitution also, as we saw in the case of King v. First Capital Financial Services. Good morning. May it please the Court, David Novoselsky and Robert Markoff for the Appellate Counsel. Mr. Novoselsky, before you get into your argument, you heard the question that I had, Ms. Zilligan, right, regarding the posture of this case. Yes, sir. The plaintiffs are only asking us to address the constitutionality, right? That's correct. We put it both in our brief and in our motion. I'll be blunt. No good deed goes unpunished. It was intended, you can see it in the record, rather than have 102 lawsuits. The intent was to permit all of the recorders statewide to participate, raise whatever objections they wanted. Here, 101 thought that was a good idea, participated through the Lake County State's Attorney and through the Lake County Recorder. At the time this matter was heard, Cook County had every opportunity to intervene if they wanted to. They had notice. I think we put it in our brief. Our comment now is, well, it's absurd to say we didn't have notice. We just didn't have notice at the time the class was served. Well, if that's correct, this court's decision in the shawl, which I was on the losing side of, so I'm painfully familiar with it, says that any time prior to a final judgment, you can vacate the class certification. They didn't do anything until the case first came before this court, and briefs filed and intervention in this court raised these issues. And frankly, on the issue of whether they should be a party, and I suggest to this court, they can be dismissed. It doesn't impact on the constitutional issue. They really weren't a necessary party. We filed suit. We had real estate closings in Lake County. We didn't have to name any county other than Lake County. It was done for the purpose of allowing, perhaps erroneously, a larger group to defend it if necessary. The Attorney General intervened without objection to represent the state of Illinois and the people. The local recorder of deeds and her counsel were very vigorous. We've provided the court with evidence that there were notices going out. Ms. Vandiver set up a group and gave everybody a notice and the opportunity to participate. So I assume the county's position would be, if we were improperly named as a defendant, then vacate that order. That order is, the class certification is not necessary to resolve the core issue before the court. Nor was it necessary to resolve the core issue before the circuit court. Now, the other issue, this voluntary payment that they raised, was addressed at the trial level. You know, they come in and say, well, look, here's a deed. The reason this wasn't raised by the parties below was addressed. And I think in our last pleading, we gave you a copy of the HUD, I think it's called the HUD 1. I don't do real estate work. But what you do is, like 99% of these cases, it's a mortgage, the lender required by state and federal law, the money is not paid to the recorder. The money is paid to a title company or a closing entity. You can, and it was done here, you can object to them saying, look, we want you to protest this for us. But the payment is not made by the party purchasing the property. It's made usually in a group as part of the HUD 1. If it's Chicago title, Chicago title will probably record 2,000 deeds in a week or two period. They write one check or one draft to the local recorder. I think it's line 201 on the HUD 1 we gave you, which was before the trial court, that the payment, you know, county's theory is all you got to do is write it on your check at the closing. That's not how it's done. And that's the problem with coming in before this court for the first time. This could have all been ironed out at the trial level. They did have notice. But the Lake County state's attorney and the Lake County recorder were more familiar with the process, and who had the evidence there decided not to. Mr. Legner and Ms. Gray are very skillful counsel. They believe that the voluntary payment doctrine was appropriate. It would have been raised at the trial level. This is not a trial court. I've been told that numerous times over the last, oh, God, 40 years. I'm starting to feel old, probably because I am. But that's what, in essence, you're hearing today. Well, look at that deed. And the recorder isn't given an opportunity for Mr. Marks or Mr. Moore to say, okay, we're recording these under protest because it's part of this large chunk of money coming in from somebody else. All of this was developed at the trial level, which is why the idea of trying your case here for the first time I don't think is correct. But as a practical matter, Your Honor, if you want to vacate, this court wants to vacate the class certification, it can do so. The case can go back, Your Honor, very correctly, it can go back. And at that point, if Cook County, interestingly enough, I assume then Cook County wouldn't want to participate, because if they weren't properly part of this case, and if it goes back, they're going to do what? Intervene, which means they were part of, they should have been part of the case in the first place. They had that opportunity. We then go back before Judge Stark. Judge Stark says, okay, here's your HUD-1, here's a letter objecting, okay, that takes care of the voluntary payment. I disagree that you have to affirmatively plead in it, by the way. We gave you case authority to the contrary. But that's a resolvable fact issue, all of which could and should have been resolved before. Now, hopefully I've answered the court's question, but I'm sorry. Well, I just, after the last ten minutes, I guess you told me that constitutionality is that issue, right? I believe it is. And if the problem we have here is all of these issues could and should have been ironed out at the trial level, if Cook County wants to be dismissed, they can be dismissed. It doesn't affect the constitutionality. Now, the other issue on constitutionality, going back to Justice Burke's question, is this is a unique statute. In 2010, if you go back and look at the legislature, the legislation, there is no finding at all. So for the first three years, you don't have this finding that it helps people, it rises the boat. There's simply no finding at all. When Judge Stark was asked to look at this statute, there was no rational basis stated by the legislature at all. So you have a statute which on its face says we're going to offer a rental subsidy for landlords, not even, this isn't your normal Title VII where the renter gets a check. We're going to give a check to certain landlords to assist them in renting to low-income people. We're only going to put that burden, we're not going to put it on every landlord in the state of Illinois, which they could have done, perhaps. We're not going to put it on every landowner in the state of Illinois. We're only going to put it on people who record a deed going forward. What is the legislative rationale for that? There is none, zero. While after Judge Stark was ruling, the legislature is told, presumably by their attorneys, the Attorney General, lookit, here's the argument we made to Judge Stark, why don't you adopt this as your finding? And they did. And Mr. Legner and Ms. Gray in their brief don't dispute that. They made no findings, they held no hearings. You can look at the legislative record. They simply said, okay, if that's the rationale you're arguing, it's now our rationale. So there's really a dichotomy here. There's two statutes, there's 2010 to 2013, where there is no legislative intent or discussion at all. I respectfully submit that this court, under Lindner and the other cases, even if there was an intent, has to decide whether there's a rational basis for only imposing this surcharge, not on every landowner in the state of Illinois, because we're told that helps everybody's property. Not on the rental industry itself, there's a lot of landlords, they're getting the benefit, but they're not paying a penny. Not on anyone else within the community, just one isolated group. And frankly, there's several of these cases that are either on their way up or already on their way here. Either we have a uniformity clause or we don't. Reading the arguments presented in virtually all of the briefs on uniformity clause cases, they cite Irongold, they cite a few other cases, they tell you exactly what Justice Burke in the court was told this morning. Crocker and Boynton really aren't good law anymore, we're going to retreat from that. And in essence, this court is not empowered to review the rational basis. You're not empowered under the uniformity clause to do what this court has said repeatedly. When it's a uniformity clause challenge, the first burden is on the taxing body to establish a reasonable basis for taxing one group and not others. In this particular case, there was no basis at all presented by the legislature. There was no evidence at all before the trial court. He correctly said, look, I'm going to perform the analysis that the Supreme Court says I may do. I'm going to decide whether there's a rational basis for doing what we're doing here. I don't find a rational basis by saying it helps everybody's property values. You're not taxing everybody who owns property. I don't believe it is because when the statute was amended, it was amended going forward. It didn't retroactively, in fact, all it did really was change the nature of the surcharge. It changed it from a $10 charge to a $9 charge. It removed the amount that was ostensibly there for the local recorder administering the program. We then have a situation, however, with what do you do with people who for three years were paying this fee and under Rain Tree, which is the correct way I believe to look at the, I'm sorry, the Tort Immunity Act, you have an unjust enrichment under both Carver and Rain Tree. So I think it's, I always mispronounce this, Manatee. This court says it's moot when the relief is complete. Here we have, and let's go back to Carver even, which was cited by the state. You have really almost an odd result. You have a statute which the legislature changes prospectively. And now you're being told that it was moot, that change moots everything. So you have people who've paid a lot of money, perhaps improperly, but they have no right to recover it. I was looking at Rain Tree again this morning. It's kind of tough to sleep on some of these beds in the hotels, so you get a lot of time to be awake. And this court very specifically said in Rain Tree as to the, not just the concept of tort immunity, but what the function of these declaratory judgments are. This case is a declaratory judgment. Judge Stark declared both statutes unconstitutional, both the 2010 iteration and the 2013. We have, as in Rain Tree, as this court pointed out, this is simply once there's a declaration, the parties have a right to, and I think the comment was, reading from page 257 of Rain Tree, thus if the lawsuit is ultimately successful, the amount of the award will be measured by the village's unjust gain rather than the plaintiff's loss. So that really addresses two things here, both this concept of tort immunity, which we think has been raised, interestingly enough, not raised at the trial level, but even if it's here and it's here and it has to be addressed, Rain Tree resolves that, so does Carver, but here we're also talking about, and I think it is Manatee, and I apologize for the pronunciation, it's in our brief, you have an incomplete result. You don't have the relief that should be here. You do have, if you simply say, okay, we've changed the statute, the people who paid the money from 2010 to 2013, you did pay it, the statute may be unconstitutional, but the taxing body keeps the money. I think the comment this court made in Carver, echoing this Seventh Circuit, a few times two courts have agreed, is that's kind of an absurd result. It's clearly unjust. And again, the other thing that's almost unique here is, and again, the brief written by the Attorney General and the Lake County recorder don't disagree. You're being told that once the legislature makes any finding, you're bound to buy it. Well, if that's correct, then again, we really shouldn't have a constitutional clause that says uniform taxation or non-uniform, we can't allow non-uniform taxation. Because anything the legislature says is presumptively binding on this court. I think this court in Linder says that kind of result reduces our role to pretty much a cipher. They quote the U.S. Supreme Court, and I think the phrase used there was toothless. It's not a toothless clause, either it is due process or equal protection. And I think the Arngold decision, which has become the poster child of upholding statute, has been misread by this, I don't think the court there said, whatever rationale is offered, we have to accept it. Because then you really are, not only does this court have no role, but the uniformity clause has no teeth whatsoever. Let's look at this statute itself for a second. This court, I believe very respectfully, must examine whether there is a rational basis. A rational basis from the legislature, which is really not a finding, but simply tacked on. It says, those who newly register property get more of a benefit than other people throughout the state. That's in the briefs and the arguments and in the legislative finding. Does this court then say, okay, we're bound by that, whether it makes sense or not? Frankly, I don't think this court is bound. The U.S. Supreme Court has rejected that concept. If this court is going to accept this rationale here, then we really no longer have the uniformity clause. We really have no function for this court anytime there's a legislative amendment that's challenged. This court must accept whatever rationale the legislature comes up with. And again, this is where this dichotomy comes up. And I don't know that it's really well expressed in the briefs, and if so, I apologize. There's no question from 2010 to March of 2013, when Judge Stark said, folks, I don't find this reasonable. There was no legislative rationale for a statute that on its face, very respectfully, I think violates the uniformity clause. It clearly, in the words of both Crocker and Boynton, and I don't think those cases are debt letters, says you are taxing a limited group who is not the only one carrying the benefit, is not the one that even caused this. And the response we're getting from the government is, well, it doesn't have to be a perfect rationale. My suggestion is there has to be some common sense, and that's what this court does. This court's role is not to rubber stamp the legislature. And I apologize, I'm not trying to be rude to opposing counsel. That's the argument they have to make. They've taken the wording out of Arngold and a handful of other cases, and I think they've stretched it to a position where this court, if it accepts that, is going to find itself, these fee cases are a substitute for general revenue. Most of your Title VII in the federal system, we have Illinois housing grants, they're all sustained out of general revenue. It's placed on everybody in the state. It's a public burden shared by everyone. As Judge Stark pointed out, there's really no reasonable basis to put this not simply on landowners, but on landowners who are newly registering a deed. So very respectfully, my time is getting up. The fee office issue, again, if you look at the statute, it says it's a fee, explicitly, for administering the program. None of the recorders administer the housing program. It's a state fund. And again, we kind of went around the rosy when the 1970 Constitution was entered. You had a slew of cases, including Schlesinger, where the legislature kept putting these fee statutes in, this court kept knocking them out. This is a pretty straightforward fee statute. The court doesn't have to reach it if the court finds that there's no rational basis. The statute is unconstitutional with or without the fee. The distinction here is under Schlesinger, and I think it's an important decision, the state of Illinois withdrew its defense of that particular statute, intervened as a party plaintiff, and says, we want you to give our money back. They didn't do it here. And in fact, you've got a brief written on behalf of 101 recorders, where you have a split inside the brief. The state of Illinois said, it's our money, give it to us, take it from the recorders, which I don't think can be done. I think it's an argument that really can't be presented to this court. The state could have withdrawn, chose not to. They could have intervened, but they chose not to. I thank the court for its attention this morning. Thank you very much. A few points, Your Honors. First, the fact that there were no legislative findings for the first three years of the statute in no way minimizes the fact that there are legislative findings for the statute now. Again, as we discussed before, legislature doesn't have to make findings in the statute for the statute to survive rational basis analysis. But it did in this case, and those facts are entitled to deference. We're not arguing that this court is unrebuttably bound or irrevocably bound by those factual findings. What we are arguing is, once the legislature makes factual findings in support of a statute, then it is incumbent upon the plaintiffs to rebut those. And they can't rebut those with just speculation. They need some sort of evidentiary showing to show that it was unreasonable or irrational. And there is absolutely no such showing in this case. Counsel relies a lot on Crocker versus Boynton. But one important distinction needs to be made at the outset, and that is there are two separate theories here. There's a uniformity clause theory and a due process theory. Those are separate analyses. There's been discussed as if they've been merged, but they're not. There's still two separate analyses. Crocker and Boynton were due process cases. They were not uniformity cases, and they have been explicitly distinguished by this court by the fact that they are not uniformity cases. The argument that the recorder improperly retains a fee, even though the recorder does not implement the program, is incorrect. The recorder does play a role in implementing the program because the recorder has to collect the money, segregate it, and then send it to the state. That's the role in the administration of the property program that the General Assembly was referring to when they wrote that statute. With reference to the Schlesinger point at the end, there's no internal split here between the state and the county. It is our position that the $1 portion of the original $10 surcharge was meant for the county all along. But if this court disagrees with that and finds that it was an improper skim of state money, then Schlesinger indicates that the $1 should go to the state because it was all along a proper state charge that the county had no right to. It doesn't just get returned to the payer. Finally, with regard, Justice Garment, to your question regarding mootness, it is true that the fee office challenge is moot and was moot. They got rid of that $1 portion of the surcharge. The General Assembly removed it from the statute. It's not part of the surcharge. At that point, the fee office argument became moot. Now, the $9 part of the surcharge stayed in the case, and that's certainly a fair game, but the fee office challenge became moot at that point. Mr. Legner, could you just chime in briefly on the constitutional versus non-constitutional issue or situation? We certainly are on board with and agree with the position of the Cook County Recorder in this case. I think ultimately, if the decision is that there are still, regardless of class certification issues or whatever, if there's still a constitutional challenge brought by the plaintiffs against the defendants that are properly intervening in this case, then it's fair for this court to look at. However, it is also true that the court should consider the voluntary payment doctrine defense that's been raised that would cut off any consideration of those constitutional claims before reaching the constitutional issues. And that would be consistent with the constitutional avoidance doctrine from her. So I guess the short answer, after that long-winded explanation, is that there is a way for this court to avoid reaching any constitutional decisions, making constitutional decisions in this case, if they find that all recovery would be barred. But the parties proper are here on the constitutionality of the statute. That's correct. That issue was really raised by the intervener here. Yes, that is true. So, at least in this regard, you would agree with Mr. Novoselsky that the reason we took this case is to resolve the constitutionality. This is a direct appeal from a finding under Rule 18 that the statute wasn't constitutional. Justice Thomas, if I could go back to the same point that you're making. This was an appeal of the final judgment, so it's under 302A. And under that section, under that jurisdiction, this court can look at any order that was entered prior to that final order. And we're asking you to specifically look at the defendant class order, because of the possible ramifications it has for defendant class certifications going forward. This court could certainly address the deficiencies of that defendant class certification and still find that the statute in this matter is constitutional. Furthermore, the plaintiff in this matter said that Cook County Recorder's Office had notice of the matter. But it's the timing of the notice that's important. This notice that came to the Cook County Recorder's Office was September 11, 2013. That was after the defendant class certification in September of 2012, after the order already finding the statute unconstitutional in April of 2013, and then after the finding of unconstitutionality on September 9. And so there was no opportunity for Cook County or any of the other recorders outside of Lake County to present any arguments at the trial court level that would impact the defendant class certification or the arguments to the constitutionality of the statute. Furthermore, if plaintiffs want to recast their complaint and say that this is a restitution matter and not a tort, then the voluntary payment doctrine still applies. As we saw in King v. First Capital Financial, where there is a claim for restitution, the voluntary payment doctrine still applies and the taxpayer must show that there's some sort of protest or some kind of duress or they were under, they were compelled to pay this fee. And that has not been shown. There are no facts that are pled in the complaint or in any of the subsequent filings in the summary judgment motions that would lead to that conclusion. With regard to plaintiffs saying that they've done a good deed in certifying the defendant class, to sue a defendant without giving them notice and an opportunity to defend themselves, we submit to you, is not a good deed. And that is what Cook County Court is asking for today. This is the relief we're requesting. Therefore, we're asking for the court to reach the merits of the defendant class certification, vacate that order, as well as vacate the two orders finding the rental housing support fund unconstitutional and remand this matter back to the Lake County Circuit Court with instructions to dismiss this matter and move forward with the case. Thank you. Thank you. Thank you. Thank you. Thank you.